**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
LAW OFFICES OF DANIEL SNYDER
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| **AUSTIN ARGUELLO**, | Case No. 3:24-cv-01858 |
| Plaintiff, | **COMPLAINT** |
| v. | **42 U.S.C. § 1983** |
| **STATE OF OREGON and AMY ALLEN,** | Jury Trial Demanded |
| Defendants. | |

**NATURE OF ACTION**

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and Or. Rev.

Stat. § 30.260 to redress Defendants' negligence and deliberate indifference to Plaintiff's

serious medical needs.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over Plaintiff's claims of violation of federal constitutional rights pursuant to 28 U.S.C. §§ 1331(a) and 1343 because the causes of action arise under 42 U.S.C. § 1983. This Court has jurisdiction over Plaintiff's supplemental state law claims under 28 U.S.C. § 1367.

3.      Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Oregon and because Defendants are subject to personal jurisdiction in the District of Oregon.

## TORT CLAIM NOTICE

4.      Prior to the institution of this action, Plaintiffs provided notice of this claim to all necessary parties pursuant to ORS 30.275.

## PARTIES

5.      Plaintiff Austin Arguello is a citizen of the United States of America. At the time of filing of this action, Plaintiff has standing as he was in custody of the Oregon Department of Corrections (ODOC) at Deer Ridge Correctional Institution (DRCI).

6.      Defendant State of Oregon operates Oregon Department of Corrections (ODOC) which is an agency of the State of Oregon. ODOC owns and operates correctional facilities in Oregon, including DRCI and is responsible for the inmates in its facilities.

7.      Defendant Amy Allen was a registered nurse working for the State of Oregon at DRCI during the relevant time period as alleged below.

## GENERAL ALLEGATIONS

8.      On November 11, 2022, Plaintiff fell in the mop closet and broke his leg while

working as a medical orderly at Deer Ridge Correctional Institution.

9.      On November 14, 2022, Plaintiff told Corrections Officer Cerventes, the five-day swing shift officer in Unit, that he could not work because he thought his leg was broken as a resulting of falling on November 11, 2022. Cerventes told Plaintiff he was lying. Cervantes mocked Plaintiff and punished him for trying to rest by celling Plaintiff in for 24 hours.

10.     On November 22, 2022, Plaintiff told Corrections Officer Johnson about the incident on November 11, 2022 and asked him to file an incident report.

11.     On November 22, 2022, Plaintiff reported his accident to Ms. Beamish, the medical records staff member, and she sent Plaintiff to his cell. He was experiencing sharp and throbbing pain that radiated to his foot, and it hurt to walk, stand, and sleep.

12.     On November 23, 2022, Plaintiff saw Defendant Allen and she told Plaintiff that if he could walk, then nothing was broken. Plaintiff told her exactly where he broke his leg, and she ignored Plaintiff. Plaintiff asked for crutches and she denied them to him. Defendant Allen was deliberately indifferent to Plaintiff's pain and obvious need for medical care. Defendant Allen knew of the ongoing risk of pain and permanent injury if prompt and adequate medical care was not provided and refused to provide appropriate care.

13.     On November 25, 2022, Plaintiff saw a triage nurse and she told Plaintiff he would see Dr. Beamer in a couple weeks.

14.     On November 24, 2022, Plaintiff sent a kyte to Corrections Officer Johnson asking for an incident report. He said he couldn't verify Plaintiff's story and refused to provide an incident report.

15.     On November 24, 2022, Plaintiff notified the Inmate Work Coordinator Chapman about his injuries and how he suspected he broke his leg.

16.     On November 28, 2022, Plaintiff sent another kyte to Medical telling them he broke his leg and needed X-rays. Plaintiff kyte said "I have throbbing pain in my shin while bearing weight. If I were to make my best guess I'd suspect a left fibula fracture." Plaintiff asked to see a doctor as soon as possible.

17.     On November 28, 2022, Inmate Work Coordinator Chapman granted Plaintiff two weeks off work.

18.     On December 2, 2022, Plaintiff sent another kyte to Medical venting his frustrations of not having seen a doctor yet. Plaintiff told them again that his leg was broken.

19.     On December 8, 2022, Plaintiff sent another kyte telling Medical about his extreme pain and how he's unable to bear weight. Plaintiff told them once more that his leg is broken. Plaintiff asked for crutches and told them how he's unable to go to chow on his broken leg. Plaintiff is told that he's lying and has a low pain tolerance. Plaintiff was mocked for having a broken leg. Plaintiff would cry due to the pain of attempting to walk to chow. On some days, Plaintiff would not eat because the pain was so intense, and he was unable to make it to chow on his own.

20.     On December 9, 2022, Inmate Work Coordinator Chapman forced Plaintiff to return to work despite his injury. Plaintiff told him that he believed his leg was broken but the doctor had not x-rayed his leg yet. Plaintiff told him he's in extreme pain and can't bear weight, yet he forced Plaintiff to work in the veggie room carrying 50-pound bags of potatoes and onions. Plaintiff was in tears because the pain was so intense, yet Chapman forced Plaintiff to keep working. If Plaintiff refused to work, Chapman would send Plaintiff to the segregation unit and he'd lose his transitional leave.

21.     On December 21, 2022, Plaintiff saw Dr. Beamer. Dr. Beamer told Plaintiff

that he did not think Plaintiff's leg was broken but did x-rays anyway. Plaintiff told him that he is still unable to bear weight and has extreme pain. Dr. Beamer refused to give Plaintiff crutches.

22.    On December 21, 2022, the x-rays revealed a healing fracture of the fibula shaft.

23.    On December 27, 2022, Plaintiff notified medical staff that his back was severely injured as well from the fall. Plaintiff could not sit for extended periods of time and Plaintiff had extreme pain that was unmanageable. Defendant knew of the ongoing risk of pain and permanent injury if prompt and adequate medical care was not provided and refused to provide appropriate care.

24.    On December 28, 2022, Plaintiff notified medical again about his back pain specifically citing the pain around the L4/L5 vertebrae. Defendant failed to send Plaintiff out for an MRI despite the obvious medical need.

25.    After being released from custody, Plaintiff had additional x-rays that revealed Plaintiff damaged his L5 vertebrae from the fall.

26.    On March 6, 2023, Orthopedic Surgeon Paul A. Schultz of Desert Orthopedics found that Plaintiff's fall on November 11, 2022, resulted in Unspecified Thoracic, Thoracolumbar and Lumbosacral Intervertebral Disc Disorder. At the time, Plaintiff was still in extreme pain preventing him from performing daily tasks. The pain would keep Plaintiff awake at night and he could not sit or stand for extended periods of time. Plaintiff required physical therapy for his injury.

27.    On March 13, 2023, Plaintiff saw PA-C Christine J. Goodall who told Plaintiff his pain might be a problem for up to a year. Plaintiff's current job requires him to stand and the

PAGE 5 – COMPLAINT

pain from his leg and back is unbearable.

28.     Plaintiff has Bipolar II Disorder and his pain and suffering has caused his bipolar disorder to worsen. He is anxious, depressed, and requiring more medications to remain stable.

29.     On April 19, 2023, Plaintiff delivered a tort claim notice to DAS.

30.     On May 15, 2023, Plaintiff was seen at Resolve Physical Therapy for an initial examination, and they determined he had functional deficiencies in his lumbar spine range of motion.

31.     On June 4, 2023, Plaintiff was seen by Dr. Brett Singer of St. Charles Health System for an MRI of his lumbar spine. It revealed a bulging disc at L5 that was traversing on S1 nerve roots and acute right-sided low back pain with right-sided sciatica. Plaintiff is still experiencing intense, chronic pain and he is unable to work. He was referred back to Dr. Paul Schulz and the next steps were to have surgery or get an epidural injection.

32.     On June 5, 2023, Plaintiff saw a doctor. He believed that the fall that broke Plaintiff's leg resulted in his herniated disc. Plaintiff was scheduled to have surgery on June 23, 2023, and his doctor had Plaintiff take oxycodone every six hours because the pain was so severe it kept him from walking, sitting, and sleeping.

33.     On June 23, 2023, Plaintiff had surgery. The surgery was successful. Plaintiff had to quit his job landscaping because of the injuries. From November 11, 2022 until surgery Plaintiff was unable to sit, stand, sleep, or function in daily life. He had significant musculoskeletal impairment leading to limitations in functioning.

34.     At the time of filing this lawsuit, Plaintiff was not confined in any jail, prison, or other correctional facility and the exhaustion requirements of 42 U.S.C. § 1997e(a) do not

apply.

## FIRST CLAIM FOR RELIEF

### 42 USC 1983 – Eighth Amendment

### Against individual defendant

35.     Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

36.     The Eighth Amendments impose a duty on jail officials to provide humane conditions of confinement, including adequate medical and mental health care and protection from harm and threats to an inmate's safety and security.

37.     Defendants knew Plaintiff would suffer serious harm or death if they failed to properly monitor him or provide appropriate medical care.

38.     Defendant was deliberately indifferent to Plaintiff's health, safety, serious medical needs as alleged above.

39.     As a result of defendants' deliberate indifference, Plaintiff endured and suffered severe physical and emotional distress and suffered a preventable injury.

40.     Defendants have shown reckless and callous disregard and indifference to inmates rights and safety and are therefore subject to an award of punitive damages to deter such conduct in the future.

41.     Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### (Negligence – against Defendant State of Oregon)

42.     Plaintiff re-alleges and incorporates all prior relevant paragraphs.

43.     The risk of harm to Plaintiff was foreseeable to the Defendant.

44.     Defendant State of Oregon, by and through its employees or agents, including

but not limited to employees named as defendants in this Complaint, were negligent in their treatment of Plaintiff in that they failed to use the degree of care, skill, and diligence used by ordinarily careful health providers practicing in the same or similar circumstances in the same or similar community.

45.     As a direct result of the actions and inactions of defendant State of Oregon, Plaintiff endured and suffered physical and emotional distress and suffered a preventable injury. Plaintiff is entitled to economic and noneconomic damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF

### (ORS 659A.103 et seq. - Oregon Rehabilitation Act)

### Against Defendant State of Oregon

46.     Plaintiff realleges all relevant paragraphs.

47.     Plaintiff is a 'disabled person' as defined at ORS 659A.104(1).

48.     Defendant is an 'employer' as defined at ORS 659A.106.

49.     After Plaintiff disclosed Plaintiff's disability to defendant, defendant began to discriminate against Plaintiff as alleged above.

50.     Plaintiff requested a reasonable accommodation from defendant of being allowed time off work due to his disability and the use of crutches. Defendant failed to engage in the interactive process with Plaintiff and required Plaintiff to return to work despite his fractured leg and refused to provide Plaintiff with crutches.

51.     As a result of defendant's conduct, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

52.     As a direct result of the actions and inactions of defendant State of Oregon,

Plaintiff endured and suffered physical and emotional distress and suffered a preventable injury.

Plaintiff is entitled to economic and noneconomic damages in an amount to be determined at

trial.

## PRAYER FOR RELIEF

Plaintiff prays that this Court will enter a Judgment against Defendants granting

Plaintiff:

A. Economic and noneconomic damages against Defendants in an amount to

be determined at trial;

B. Punitive damages against the individual defendants in a sum that is just as determined

by a jury;

C. Equitable relief;

D. Plaintiff's costs, expenses, and attorney fees in this suit; and

E. Any additional relief this court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff demands a trial by Jury.

Dated: November 8, 2024

**Law Offices of Daniel Snyder**

*s/ Carl Post*
Carl Post, OSB No. 06105
carlpost@lawofficeofdanielsnyder.com
John David Burgess, OSB 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Attorneys for Plaintiff